Honorable Robert S. Lasnik

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RYANAIR DAC, an Irish company,<br><br>         Plaintiff,<br><br>v.<br><br>EXPEDIA INC., a Washington corporation,<br><br>         Defendant. | No. 2:17-cv-01789-RSL<br><br>**PLAINTIFF RYANAIR DAC'S OPPOSITION TO DEFENDANT EXPEDIA INC.'S MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED** |

Plaintiff, Ryanair DAC ("Ryanair"), respectfully submits this brief in opposition to Defendant Expedia Inc.'s ("Expedia") motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Motion").

**INTRODUCTION**

Expedia's Motion attempts to insulate Expedia's illegal conduct by redefining key portions of the Computer Fraud and Abuse Act ("CFAA"). Expedia is wrong for at least two reasons. First, contrary to Expedia's argument, the CFAA applies extraterritorially and does not include a domestic injury requirement. Requiring domestic conduct or injury requires this Court to either ignore the definition of "protected computer" or redefine that term, neither of which is appropriate. By defining a "protected computer"—the relevant object under the CFAA—as "including a computer located

PLAINTIFF RYANAIR DAC'S OPPOSITION TO
DEFENDANT EXPEDIA INC.'S MOTION TO
DISMISS (2:17-CV-01789-RSL) - PAGE 1

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

outside the United States," Congress ensured that the CFAA reached extraterritorial computers. 18 U.S.C. § 1030(e)(2)(B).

Second, even if this Court finds that domestic injury is required by the CFAA—which it is not—Ryanair meets that requirement. Although the Ninth Circuit has not set forth a test for determining a domestic injury under the CFAA, district courts have focused on where the misconduct at issue took place, rather than where the injury occurred, when tasked with this question under the RICO statute. As such, Expedia's reliance on the location of the injury does not reflect the current state of the law in this Circuit or elsewhere. But even if this Court applies the test described by Expedia, Ryanair has alleged the requisite domestic injury to entitle it to recover under § 1030(g).

Lastly, Expedia cannot avoid jurisdiction in this Court by relying on the choice of law provision within Ryanair's website's Terms of Use ("Ryanair TOU"). Simply put, because Ryanair brings this lawsuit for Expedia's violations of the CFAA, not breach of the Ryanair TOU, the choice of law in the Ryanair TOU has no relevance here.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). In a motion to dismiss, a court must accept the allegations in the complaint as true and make all reasonable inferences in favor of the plaintiff. *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). To survive a motion to dismiss, a plaintiff needs to plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted). This standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Determining whether a complaint states a plausible claim for relief is context-specific, and requires a court to draw on its judicial experience and common sense. *Id.* at 679.

PLAINTIFF RYANAIR DAC'S OPPOSITION TO DEFENDANT EXPEDIA INC.'S MOTION TO DISMISS (2:17-CV-01789-RSL) - PAGE 2

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

**ARGUMENT**

The CFAA prohibits unauthorized users from trespassing on "protected computers." *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1065 (9th Cir. 2016), *cert. denied*, 138 S. Ct. 313 (2017). Under the text of the CFAA, protected computers explicitly include computers sitting outside of the United States, and the CFAA allows a private right of action for such trespass. Expedia's argument that recovery under the CFAA requires a domestic injury to a computer located outside the United States is against both the language and intent of the statute. Expedia cannot shield its illegal activities by creating a requirement under the CFAA that does not exist. As further evidence of its unreasonable position, Expedia cannot articulate what makes a loss "domestic." But even if a "domestic" injury is necessary, which it is not, Ryanair has suffered domestic loss and this Court should deny Expedia's Motion.

**I.    THE CFAA'S PRIVATE RIGHT OF ACTION APPLIES EXTRATERRITORIALLY**

**A.    The CFAA Applies to Foreign Computers and Must Be Read as a Whole.**

The plain language of the CFAA confirms that it applies extraterritorially to computers located outside the United States. In *RJR Nabisco v. European Community*, the Supreme Court explained that "absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." 136 S. Ct. 2090, 2100 (2016). This presumption, however, is rebutted when—like here—"the statute gives a clear, affirmative indication that it applies extraterritorially." *Id.* at 2101.

The CFAA defines a "protected computer" as "including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States." 18 U.S.C. § 1030(e)(2)(B). Under § 1030(g) of the CFAA—the provision at the heart of Ryanair's claims—"[a]ny person who suffers damage or loss <u>by reason of a violation of this section</u> may maintain a civil action against the violator . . . if the conduct involves <u>1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i).</u>" 18 U.S.C. § 1030(g) (emphasis added). Subsection (c)(4)(A)(i), in turn, refers to an "offense under subsection (a)(5)(B),"

PLAINTIFF RYANAIR DAC'S OPPOSITION TO DEFENDANT EXPEDIA INC.'S MOTION TO DISMISS (2:17-CV-01789-RSL) - PAGE 3

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300

which describes an actionable violation of the CFAA as including intentionally accessing "a protected computer without authorization, and as a result of such conduct recklessly causes damage." 18 U.S.C. § 1030(a)(5)(B). In other words, the CFAA's private right of action clause explicitly applies to claims alleging that a person intentionally accessed a "protected computer" located outside of the United States.

The CFAA's civil right of action cannot be read in a vacuum; it imposes civil liability for violations of other parts of the statute. *See* 18 U.S.C. § 1030(g). Therefore, § 1030(g) explicitly incorporates the prohibitions against unauthorized access of a "protected computer" in § 1030(a)(5)(B). *See, e.g.*, *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004) (noting the private right of action "applies to any violation of 'this section'" including obtaining information from a protected computer).

Again, because a "protected computer" can be located outside the United States, the CFAA's civil liability applies to conduct in relation to a foreign computer. Similarly, because the CFAA defines "loss" as costs incurred in "conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense," it necessarily encompasses foreign injuries suffered in relation to a "protected computer" located outside of the United States. *See* 18 U.S.C. § 1030(e)(11). Thus, the plain text of the CFAA creates a private right of action for injuries suffered outside of the country related to computers located outside of the country.

This Court should incorporate the definition of "protected computer" into its construction of the CFAA because statutes must be read as a whole. *See United States v. Morton*, 467 U.S. 822, 828, (1984) ("We do not . . . construe statutory phrases in isolation; we read statutes as a whole."). It is "inappropriate to construe a statute by reading related clauses in isolation or taking parts of a whole statute out of their context." *Westwood Apex v. Contreras*, 644 F.3d 799, 804 (9th Cir. 2011); *see also Sturgeon v. Frost*, 136 S. Ct. 1061, 1070 (2016) (noting statutory language "cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme").

PLAINTIFF RYANAIR DAC'S OPPOSITION TO DEFENDANT EXPEDIA INC.'S MOTION TO DISMISS (2:17-CV-01789-RSL) - PAGE 4

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

This cardinal rule of statutory construction is also true for the CFAA. *See Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1157 (5th Cir. 2006) ("Section 1030(g) extends the ability to bring a civil action to any person suffering damage or loss under 'this section,' which refers to § 1030 as a whole, as subsection (g) does not proscribe any conduct itself."). The CFAA creates "criminal <u>and civil liability</u> for whoever intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer." *Facebook, Inc.*, 844 F.3d, 1065-66 (quotation omitted; emphasis added). Nothing in the statute restricts its scope to only domestic injuries. To find that the private right of action requires domestic loss or damages would rewrite the definition of "protected computer" to include only those computers sitting in the United States, violating fundamental principles of statutory construction. *See United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1128 (9th Cir. 2015) ("The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there."); *accord Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*, 366 F.3d 692, 700 (9th Cir. 2004) ("A 'basic rule of statutory construction is that one provision should not be interpreted in a way which is internally contradictory or that renders other provisions of the same statute inconsistent or meaningless.'").

Indeed, this Court rejected a similar argument seeking to narrow the definition of a protected computer under the CFAA. *Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121, 1125 (W.D. Wash. 2000).[1] In *Shurgard*, the defendant argued that the CFAA only protected computers in certain industries that affect the public. *Id.* In rejecting that argument, this Court held that the definition of "protected computer" is unambiguous, in that it "prohibits the obtaining of information from *any* protected computer if the conduct involved an interstate or foreign communication," and cannot be limited to only certain computers. *Id.* (emphasis in original).

---

[1] While the CFAA has been amended since *Shurgard*, the amendments are not relevant to the *Shurgard* Court's understanding of the scope of a protected computer.

PLAINTIFF RYANAIR DAC'S OPPOSITION TO DEFENDANT EXPEDIA INC.'S MOTION TO DISMISS (2:17-CV-01789-RSL) - PAGE 5

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300

Similarly here, the CFAA expressly includes computers located outside the United States in its scope. Expedia, therefore, cannot ignore the plain language of the statute and insert a limitation that does not exist.

### B. The CFAA Amendments Show Congress's Intention to Allow Recovery for Foreign Injuries.

In addition to the plain text, the history of the amendments to the CFAA evidences a congressional intent to allow recovery for foreign injuries under § 1030(g). Initially, the CFAA was directed toward "computers," with no specific mention of a foreign computer. *See e.g.,* Computer Abuse Amendments Act of 1994, PL No. 103-322, 108 Stat. 1796 (1994). The term "protected computer" was added in 1996, and was defined as a computer "used in interstate or foreign commerce or communication." *See* Economic Espionage Act of 1996, PL 104–294, October 11, 1996, 110 Stat 3488. At that time, the term "protected computer" was also inserted into the provision punishing a person who "intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage . . . ." *Id*; 18 U.S.C. § 1030(a)(5)(B) (1996). The text of § 1030(a)(5)(B) has not been altered since those amendments. *See* 18 U.S.C. §1030(a)(5)(B).

In 2001, the definition of a protected computer was expanded to include "a computer <u>located outside the United States</u> that is used in a manner that affects interstate or foreign commerce or communication of the United States." *See* Uniting and Strengthening America By Providing Appropriate Tools Required To Intercept And Obstruct Terrorism (USA Patriot Act) Act of 2001, PL 107–56, October 26, 2001, § 8014(d), 115 Stat 272 (emphasis added). The reference to a "protected computer" remained in § 1030(a)(5)(B); thus, the amendment enlarged the scope of § 1030(a)(5)(B) to include damage to and loss in relation to computers located outside of the United States. The amendment also added the current reference to 18 U.S.C. § 1030(c)(4)(A)(i) in the provision for civil actions, which as described above, incorporated § 1030(a)(5). *See* USA Patriot Act of 2001, PL 107–56, October 26, 2001, §814(e), 115 Stat 272 ("Section 1030(g) of title 18, United States Code is amended— (1) by striking the second sentence and inserting the following: "<u>A civil action for a</u>

PLAINTIFF RYANAIR DAC'S OPPOSITION TO DEFENDANT EXPEDIA INC.'S MOTION TO DISMISS (2:17-CV-01789-RSL) - PAGE 6

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300

violation of this section may be brought only if the conduct involves 1 of the factors set forth in clause (i), (ii), (iii), (iv), or (v) of subsection (c)(4)(A)(1).") (emphasis added).

Thus, with the 2001 amendments, Congress expressly chose to expand the scope of civil liability to include foreign computers. Indeed, by adding the reference to subsection (c)(4)(A)(1) in the section providing for a private right of action—and therefore the reference to "protected computers" in § 1030(a)(5)—Congress intended to expand the right of action to claims based on unauthorized access of foreign-based computers. Congress consciously and deliberately intended for foreign injuries to "computers located outside the United States" to be the subject of civil liability under § 1030(g). That is the only reasonable interpretation in light of the progression of amendments to the CFAA.

### C. The Language in the CFAA is Materially Distinguishable From RICO.

Expedia's reliance on *RJR Nabisco* is misplaced because, unlike the CFAA, the racketeering statute at issue in that case, 18 U.S.C. §§ 1961-1968 ("RICO"), does not expressly refer to harms outside of the United States. In *RJR Nabisco*, a number of foreign entities filed a private RICO action against domestic tobacco companies alleging a global money laundering scheme. 136 S. Ct. at 2098. The Supreme Court therefore needed to decide whether RICO's private right of action applies to injuries suffered outside the United States. *Id.* at 2099. After analyzing the specific civil cause of action statute in RICO, the Court decided it did not. *Id.* at 2106.

RICO's private right of action is contained within 18 U.S.C. § 1964(c), which states:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.

18 U.S.C. § 1964(c) (emphasis added). When analyzing that language, the Court held that "[n]othing in §1964(c) provides a clear indication that Congress intended to create a private right of action for

PLAINTIFF RYANAIR DAC'S OPPOSITION TO DEFENDANT EXPEDIA INC.'S MOTION TO DISMISS (2:17-CV-01789-RSL) - PAGE 7

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

injuries suffered outside of the United States." 136 S. Ct. at 2108. Specifically, the Court held that use of the term "any" in the phrase "[a]ny person injured in his business or property" was insufficient to displace the presumption against extraterritoriality. *Id.* In addition, the Court found that the limitation to certain types of injuries "signaled that the civil remedy is not coextensive with [RICO's] substantive prohibitions." *Id.*

As part of its analysis, the Court distinguished the antitrust statutes (i.e. Clayton Act) which it previously construed to allow recovery for foreign injuries. *Id.* at 2109-10 (citing *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 314-15 (1978)). The Court explained that the antitrust statutes defined "person" as "corporations and associations existing under or authorized by . . . the laws of any foreign country," and that language indicated Congress did not intend the statutes to be available only to consumers in the United States. *Id.* at 2109. Thus, because RICO did not include the same critical language, the Court could not find a similar intent to rebut the presumption against extraterritorial application. *Id.* at 2110.

Here, the CFAA is more akin to the antitrust statutes because its private right of action incorporates the definition of a "protected computer" and therefore specifically includes harm to computers outside of the United States. *See* 18 U.S.C. § 1030(e)(2)(B). In contrast, RICO does not include a definition that explicitly contemplates injury done to a foreign party. The absence of any reference to foreign harm in RICO's private right of action was vital to the Court's decision in *RJR Nabisco.* 136 S. Ct. at 2108. Indeed, RICO's private right of action refers only to § 1962, which does not discuss injuries in foreign countries. *See* 18 U.S.C. § 1962(a) (prohibiting among other things, "the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce"); § 1962(c) (making it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs

PLAINTIFF RYANAIR DAC'S OPPOSITION TO DEFENDANT EXPEDIA INC.'S MOTION TO DISMISS (2:17-CV-01789-RSL) - PAGE 8

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300

through a pattern of racketeering activity or collection of unlawful debt").[2] Thus, unlike RICO, the CFAA's specific reference to harms suffered by foreign computers as part of the definition of "protected computer" confirms that the CFAA's private right of action applies extraterritorially to injuries suffered abroad.

## II.  RYANAIR HAS SUFFERED AND ALLEGED DOMESTIC INJURIES

Even if the CFAA required a domestic injury—which it does not—Ryanair's complaint meets this threshold. Ryanair is victim to Expedia's violations of the CFAA, which take place in the United States, and Ryanair has suffered damage and loss in the United States.[3]

The Supreme Court in *RJR Nabisco* held that a civil RICO plaintiff was required to allege and prove a domestic injury, but specifically refused to define the requisite injury. *See* 136 S. Ct. at 2111. Contrary to Expedia's argument, the location of the injury is not the determinative factor.  (*See* Def.'s Mot., Dkt. # 18 at p. 16) (citing *Adhikari v. KBR Inc.*, No. 4:16-CV-2478, 2017 WL 4237923 (S.D. Tex. Sept. 25, 2017)). Rather, the prevailing view since *RJR Nabisco* is that a domestic injury depends on the place where the misconduct occurred, not the place where the injury is suffered. But under either standard, Ryanair has sufficiently stated a domestic injury.

### A.  The Prevailing Test for Domestic Injury Focuses on the Place Where the Misconduct Occurred.

After *RJR Nabisco*, two major tests for determining a domestic injury have emerged. *See Glock v. Glock*, 247 F. Supp. 3d 1307, 1316 (N.D. Ga. 2017) (describing tests). Many courts, including district courts in the Ninth Circuit, rely on the location of the defendant's misconduct. *See, e.g.*, *Tatung Co., Ltd. v. Shu Tze Hsu***,** 217 F. Supp. 3d 1138, 1154-55 (C.D. Cal. 2016); *Akishev v. Kapustin*, No. CV 13-7152(NLH)(AMD), 2016 WL 7165714 at *8 (D. N.J. Dec. 8, 2016) (focusing on the where the defendants operated their fraudulent scheme). Other courts look to "where the

---

[2] At least one court has held that the substantive provisions of the CFAA apply extraterritorially. *See United States v. Ivanov*, 175 F. Supp. 2d 367, 374 (D. Conn. 2001). However, Ryanair does not rely on the substantive provisions of the CFAA to demonstrate the extraterritorial reach of its private right of action because it is not necessary.

[3] To the extent this Court finds that Ryanair must allege domestic injury and has failed to do so in the Complaint, Ryanair respectfully requests leave to file an amended complaint.

PLAINTIFF RYANAIR DAC'S OPPOSITION TO DEFENDANT EXPEDIA INC.'S MOTION TO DISMISS (2:17-CV-01789-RSL) - PAGE 9

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300

alleged injury was suffered" in determining whether there is a domestic injury. *See Bascuñán v. Daniel Yarur ELS Amended Complaint*, No. 15-CV-2009 (GBD), 2016 WL 5475998, at *8 (S.D.N.Y. Sept. 28, 2016) ("*Bascuñán I*"), *rev'd in part, vacated in part sub nom. Bascuñán v. Elsaca*, 874 F.3d 806 (2d Cir. 2017) (*Bascuñán II*).

This Court should follow the courts in this Circuit and adopt the test focused on the defendants' misconduct. As the court explained in *Tatung*, focusing on the location of the wrongful conduct avoids the "ludicrous" result where foreign corporations are unable to avail themselves of the protections of a statute, even where all of the actions causing the injury took place in the United States. *Tatung*, 217 F. Supp. 3d at 1155; *see also City of Almaty, Kazakhstan v. Ablyazov*, 226 F. Supp. 3d 272, 284 (S.D.N.Y. 2016) ("This Court . . . shares the *Tatung*'s court's hesitation to broadly endorse an absolutist version of the rule that would, for example, categorically preclude foreign corporations with business operations or property interests maintained in the U.S. from bringing . . . actions to recover for injuries to those assets.").

Additionally, the Second Circuit rejected the focus on where the injury is suffered, and held that "the location of the property and not the residency of the plaintiff is the dispositive factor." *Bascuñán II*, 874 F.3d at 824. As the Second Circuit explained, "[f]oreign persons and entities that own private property located within the United States expect that our laws will protect them in the event of damage to that property" and should not "discriminate against foreigners who own property in the United States." *Id.* at 821. Accordingly, the *Bascuñán I* court's requirement that an injury must be suffered domestically to give rise to a private right of action has been, at least in part, abrogated by the Second Circuit's decision in *Bascuñán II*.

Moreover, the test focusing on the location of the misconduct is the only test adopted by a district court in the Ninth Circuit and is consistent with the facts at issue in the present case. The concerns articulated in *Tatung* that requiring an injury suffered in the United States "amounts to immunity for U.S. corporations who, acting entirely in the United States, violate civil [law] at the expense of foreign corporations doing business in this country" are precisely what is at stake here.

PLAINTIFF RYANAIR DAC'S OPPOSITION TO DEFENDANT EXPEDIA INC.'S MOTION TO DISMISS (2:17-CV-01789-RSL) - PAGE 10

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300

*See Tatung*, 217 F. Supp. 3d at 1155. Ryanair's complaint seeks to hold Expedia liable for its misconduct that occurred entirely within the United States, including Expedia's conduct directed to Ryanair's United States website specifically for United States residents and consumers. Focusing on the location of misconduct is, therefore, the correct approach to determine whether Ryanair has alleged a domestic injury entitling it to recovery under the CFAA. But again, regardless of which test this Court adopts, Ryanair's complaint meets the standard.

> **B.  Ryanair has Alleged a Domestic Injury Because Expedia's Wrongful Conduct that Caused Ryanair's Losses Under the CFAA Occurred in the United States.**

To sustain its claim, Ryanair must show that it suffered a loss aggregating to at least $5,000 over a one-year period due to Expedia's violation of the statute. *See* 18 U.S.C. § 1030(g). Loss is defined as:

> <u>any reasonable cost to any victim</u>, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

18 U.S.C. § 1030(e)(11) (emphasis added). In other words, loss "refers to monetary harms sustained by the plaintiff." *Phillips v. Ex'r of Estate of Arnold*, No. 2:13-CV-444-RSM, 2013 WL 4458790, at *4 (W.D. Wash. Aug. 16, 2013). Thus, to successfully "allege a loss of revenue, the loss must result from the unauthorized server breach itself." *AtPac, Inc. v. Aptitude Sols., Inc*., 730 F. Supp. 2d 1174, 1184 (E.D. Cal. 2010).

Here, the monetary harm alleged by Ryanair derives directly from Expedia's unauthorized screen scraping on the Ryanair Website. First, Ryanair expended considerable resources to find, diagnose, and block access to the Ryanair Website by Expedia. Ryanair was compelled to divert its employees from their regular duties to respond to Expedia's unauthorized screen scraping activities,

PLAINTIFF RYANAIR DAC'S OPPOSITION TO DEFENDANT EXPEDIA INC.'S MOTION TO DISMISS (2:17-CV-01789-RSL) - PAGE 11

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300

and was also obliged to pay costs to third parties for this purpose.[4] Thus, Ryanair suffered a loss within the meaning of 18 U.S.C. § 1030(e)(11) as a result of Expedia's activities.[5]

Second, Expedia's screen scraping overwhelms the Ryanair Website, impairing its availability and/or usability for its customers.[6] Expedia is well aware of the deleterious effects of screen scraping, having itself filed a lawsuit in this District alleging that certain individuals indulged in the same practice on the Expedia Website.[7] As alleged in the Complaint, Expedia's misconduct caused the same losses to Ryanair. Ryanair also alleges that it lost revenue due to impairments to the functionality of the Ryanair Website, particularly errors and slow response rates.[8] These losses are sufficient under the CFAA. *See Sprint Sols. Inc. v. Pac. Cellupage Inc.*, No. 2:13-CV-07862-CAS, 2014 WL 3715122, at *7 (C.D. Cal. July 21, 2014) (finding the plaintiff's loss allegations sufficient when it alleged that the defendants "substantially impaired the integrity of [the plaintiff's] protected computer networks" and "substantially impaired the integrity of [its] systems").[9]

Third, in listing Ryanair flights on the Expedia Website, Expedia misrepresents both the price of a Ryanair flight and the conditions on which the ticket may be booked, causing damage to Ryanair's reputation and resulting in a loss of customers and revenue.[10] Expedia also fails to direct customers to the Ryanair Website, which offers ancillary services and other flight packages, including

---

[4] *See* Compl., Dkt. # 1 at ¶ 56.
[5] *See Facebook, Inc.*, 844 F.3d at 1066 ("It is undisputed that [the plaintiff's] employees spent many hours, totaling more than $5,000 in costs, analyzing, investigating, and responding to [the defendant's] actions [of computer trespass]. Accordingly, [the plaintiff] suffered a loss under the CFAA."); *accord T-Mobile USA, Inc. v. Terry*, 862 F. Supp. 2d 1121, 1131 (W.D. Wash. 2012) (holding the plaintiff suffered the requisite "loss" under the CFAA because it incurred the cost of investigating and remedying the breaches, paid third-party carriers for roaming and overseas calls made on the SIM card, and spent over $5,000 investigating and assessing the possible impairment to the integrity of its proprietary computer system and wireless network, conducting a damage assessment, and tracking down and deactivating improperly-activated SIM cards).
[6] *See* Compl., Dkt. # 1 at ¶ 54.
[7] *See* Compl., Dkt. # 1 at ¶¶ 71-75; *see Expedia Inc. v. John Does 1-10*, No. 2:11-cv-1542, 2011 WL 9348174, at ¶¶ 12, 16 (W.D. Wash. Sept. 15, 2011) (alleging that screen scraping "impaired the site's availability and/or usability for intended users, causing material harm to Expedia, its customers, and its reputation [and] impaired the servers' condition and value and deprived Expedia of their use for a substantial time").
[8] *See* Compl., Dkt. # 1 at ¶¶ 54-55.
[9] *Cf. AtPac, Inc. v. Aptitude Sols., Inc*., 730 F. Supp. 2d at 1185 (granting motion to dismiss where the plaintiff had not alleged that it incurred any costs or experienced lost revenue as a direct result of defendants' unauthorized server access).
[10] *See* Compl., Dkt. # 1 at ¶¶ 43-48, 53.

PLAINTIFF RYANAIR DAC'S OPPOSITION TO DEFENDANT EXPEDIA INC.'S MOTION TO DISMISS (2:17-CV-01789-RSL) - PAGE 12

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

flights to and from the United States.[11] This failure therefore deprives Ryanair of the revenue it stands to earn from the purchase of these ancillary services, which accounted for 27% of Ryanair's total operating revenues in the financial year of 2017, along with the ability to even learn that Ryanair services the United States.[12] This Court has suggested that harm to a plaintiff's business reputation and a hampering of its ability to earn profit are "losses" within the meaning of the CFAA. *See T-Mobile USA, Inc.*, 862 F. Supp. 2d at 1131 (granting summary judgment to the plaintiff and holding that it suffered "loss" under the CFAA because the defendant's actions substantially harmed the plaintiff's business reputation and goodwill, and deprived it of the opportunity to earn profits). Thus, Ryanair has suffered the requisite losses under the CFAA, and this loss is present in the United States.

Finally, as Expedia's principal place of business is in Washington, the acts of screen scraping took place in the United States.[13] And because that misconduct is directly responsible for Ryanair's monetary losses under the CFAA, Ryanair has alleged the requisite domestic injury. *See Tatung*, 217 F. Supp. 3d at 1157 (finding domestic injury because "some of the alleged conspirators here are American and many of the actions that constitute part of the RICO scheme took place in California"); *accord Akishev*, 2016 WL 7165714 at *8 (denying request to vacate default judgment under *RJR Nabisco* because the unlawful conduct occurred in the United States, where the defendants operated their fraudulent scheme).

**C.     Ryanair Suffered Injury in the United States.**

In addition to suffering a domestic injury due to Expedia's misconduct in the United States, Ryanair also suffered an injury located in the United States. Expedia's screen scraping activities in the United States resulted in losses to Ryanair due to the impairment of the functionality of the Ryanair Website, the failure to direct Expedia customers to the Ryanair Website, loss of goodwill, and the imposition of an additional fee on the price of Ryanair flights listed on the Expedia Website.[14]

---

[11] *See* Compl., Dkt. #1 at ¶¶ 37, 49-50; *see also* https://corporate.ryanair.com/news/ryanair-website-to-sell-air-europa-long-haul-flights/
[12] *See,* Compl., Dkt. # 1 at ¶¶ 49-52.
[13] *See e.g.,* Compl., Dkt. # 1 at ¶¶ 3, 33-75.
[14] *See* Compl., Dkt. # 1 at ¶¶ 49-55.

PLAINTIFF RYANAIR DAC'S OPPOSITION TO DEFENDANT EXPEDIA INC.'S MOTION TO DISMISS (2:17-CV-01789-RSL) - PAGE 13

HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

Additionally, Ryanair operates a website specifically designed and directed to customers in the United States.[15] Expedia's violations of the CFAA damages this website, clearly occurring in the United States.[16] *See Tatung*, 217 F. Supp. 3d at 1156 (finding that "it would be absurd" to find conduct with the aim of "thwarting [plaintiff's] rights in California" to not result in domestic injury to plaintiff).

Additionally, Ryanair is listed on the NASDAQ and over forty percent of its shares are held in the United States.[17] Thus, due to the split in its ownership, Ryanair suffered these injuries of loss of revenue in the United States at least as much as in Ireland. *See Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 110 (2d Cir. 2016), cert. denied sub nom. *Sovereign Wealth Fund Samruk-Kazyna JSC v. Atl. Holdings, Inc.*, 137 S. Ct. 493 (2016) (citing to the Restatement of Conflict of Laws § 377 (1934) for the following proposition: "A, in state X, owns shares in the M company. B, in state Y, fraudulently persuades A not to sell the shares. The value of the shares falls. The place of wrong is X."); *see also Bascuñán II*, 874 F.3d at 823 ("The injury alleged in *Atlantica Holdings* involved the diminished value of ownership interest in a company, for which the clear locational nexus was the shareholder's place of residence."). Accordingly, as detailed above, Ryanair has sufficiently alleged that it lost revenue and suffered an injury in the United States. *See* 18 U.S.C. § 1030(e)(11) (defining "loss" as "any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service").

///

///

///

---

[15] *See* https://www.ryanair.com/us/en/.
[16] *See* Compl., Dkt. # 1 at ¶¶ 42-56.
[17] Ryanair Holdings PLC, which wholly owns Ryanair DAC, is listed on the NASDAQ. Over forty percent of the shares of Ryanair Holdings PLC are held in the United States. *See* Expedia's Request for Judicial Notice, Dkt. # 20-1 at p. 64.

PLAINTIFF RYANAIR DAC'S OPPOSITION TO DEFENDANT EXPEDIA INC.'S MOTION TO DISMISS (2:17-CV-01789-RSL) - PAGE 14

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: 503.243.2300

**III.   THE CHOICE OF LAW IN RYANAIR'S WEBSITE TERMS OF USE IS IRRELEVANT BECAUSE RYANAIR BRINGS ITS ACTION UNDER THE CFAA.**

Expedia's argument that Ryanair's choice of law clause in the Ryanair TOU precludes this action is misplaced and without merit.[18] Ryanair did not file its claims under the TOU but, instead, expressly brings this action under § 1030(g) of the CFAA.[19]

The CFAA "prohibits acts of computer trespass by those who are not authorized users or who exceed authorized use." *Facebook, Inc.*, 844 F.3d at 1065. Ryanair alleges violations of four provisions of the CFAA, all of which necessitate knowledge of the lack of authority or intention on the part of the perpetrator.[20] Ryanair references the TOU in its Complaint only to show that Expedia knew that screen scraping was prohibited on the Ryanair Website, and that Expedia knew that it was acting without authorization.[21] Ryanair does not bring a claim for breach of the TOU. And because the choice of law clause in the Ryanair TOU is limited to those actions that "may be brought by Ryanair against any party in breach of these terms and conditions," it does not apply to an action that does not allege such a breach.[22]

Because Ryanair does not bring a claim for breach of the TOU, the cases cited by Expedia are not relevant here.[23] *See, e.g.*, *Batchelder v. Kawamoto*, 147 F.3d 915, 918 (9th Cir. 1998) (holding that the choice of law provision contained in the deposit agreement governing the shareholder's claims was applicable in determining his standing to bring a derivative action); *Northrop Corp. v. Triad Int'l Mktg. S.A.*, 811 F.2d 1265, 1267 (9th Cir. 1987) (analyzing choice of law provision in agreement that formed the basis of the plaintiff's claims); *Abat v. Chase Bank USA, N.A.*, 738 F. Supp. 2d 1093, 1094-95 (C.D. Cal. 2010) (noting a plaintiff's statutory claims arising from credit card agreements are subject to a choice of law provision in those agreements). As this Court held, a

---

[18] *See* Def.'s Mot., Dkt. # 18 at pp. 16-18.
[19] *See* Compl., Dkt. # 1 at ¶¶ 76-83.
[20] *See* Compl., Dkt. # 1 at ¶¶ 78-82.
[21] *See* Compl., Dkt. # 1 at ¶¶ 61-62 ("The practice of screen scraping is in breach of the Ryanair TOU. Expedia is aware of the Ryanair TOU.").
[22] *See* Compl., Ex. A, Dkt. # 1-3.
[23] *See* Def.'s Mot., Dkt. # 18 at p. 17.

PLAINTIFF RYANAIR DAC'S OPPOSITION TO DEFENDANT EXPEDIA INC.'S MOTION TO DISMISS (2:17-CV-01789-RSL) - PAGE 15

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300

plaintiff's claims under the CFAA are not subject to a forum selection clause when those claims do not allege a breach of the agreement containing the forum selection clause. *See W. Boxed Meats Distributors, Inc. v. Parker*, No. C17-5156 BHS, 2017 WL 3034517, at *9 (W.D. Wash. July 18, 2017) (noting the plaintiff's CFAA claims were premised on the defendants' improper use of confidential information under the CFAA, not the employment agreements).

Ryanair is free to bring an action under § 1030(g) just like any other plaintiff. Its references to the Ryanair TOU in its Complaint serve to establish Expedia's knowledge of its own lack of authorization. Indeed, a claim for breach of the Ryanair TOU does not necessarily constitute a violation of the CFAA. *See Facebook, Inc.*, 844 F.3d at 1067 n.3 ("Violation of Facebook's terms of use, without more, would not be sufficient to impose liability" under the CFAA, but it "plainly put [defendant] on notice that it was no longer authorized to access Facebook's computers"). But Ryanair can use the violation of its TOU to demonstrate that Expedia had the requisite knowledge and acted without authority under the CFAA. *See EF Cultural Travel BV v. Zefer Corp.*, 318 F.3d 58, 62 (1st Cir. 2003) ("A lack of authorization could be established by an explicit statement on the website restricting access."); *accord Am. Online, Inc. v. LCGM, Inc.*, 46 F. Supp. 2d 444, 450 (E.D. Va. 1998) ("Defendants' actions violated AOL's Terms of Service, and as such was unauthorized."). Such a reference to its TOU does not trigger the choice of law provision.

Finally, even if Ryanair had elected to bring its action against Expedia under the Ryanair TOU, this would still be an appropriate forum for its claim. The Ryanair TOU states as follows:

> In the absolute and sole discretion of Ryanair, a legal action may be brought by Ryanair against any party in breach of these terms and conditions, at its election, in Ireland or the place of breach or the domicile of that party, and, if more than one party, in the domicile of any one of those parties, and all other parties shall submit to that jurisdiction.[24]

Thus, Ryanair had the option of bringing such an action in Ireland or in the United States, where Expedia is domiciled. In other words, even if Ryanair had elected to proceed against Expedia for its

---

[24] *See* Compl., Ex. A, Dkt. # 1-3.

PLAINTIFF RYANAIR DAC'S OPPOSITION TO DEFENDANT EXPEDIA INC.'S MOTION TO DISMISS (2:17-CV-01789-RSL) - PAGE 16

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300

violation of the Ryanair TOU rather than its offenses under the CFAA, this would still be an appropriate forum.

## CONCLUSION

For the foregoing reasons, Ryanair respectfully requests that the Court deny Expedia's motion to dismiss. To the extent the Court finds that Ryanair must allege domestic injury and has failed to do so in the Complaint, Ryanair respectfully requests leave to file an amended complaint.

Dated: March 12, 2018

HOLLAND & KNIGHT LLP

By:  *s/ Shannon Armstrong*
**J. Matthew Donohue, WSBA #52455**
Matt.Donohue@hklaw.com
**Shannon Armstrong, WSBA #45947**
Shannon.Armstrong@hklaw.com
Holland & Knight LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR 97204
Telephone: (503) 243-2300

R. David Donoghue (admitted pro hac vice)
Anthony J. Fuga (admitted pro hac vice)
Rachel C. Agius (admitted pro hac vice)
131 S. Dearborn Street, 30th Fl.
Chicago, IL 60611
Telephone: (312) 263-3600
david.donoghue@hklaw.com
anthony.fuga@hklaw.com
rachel.agius@hklaw.com

*Attorneys for Plaintiff*
RYANAIR DAC

PLAINTIFF RYANAIR DAC'S OPPOSITION TO DEFENDANT EXPEDIA INC.'S MOTION TO DISMISS (2:17-CV-01789-RSL) - PAGE 17

**HOLLAND & KNIGHT LLP**
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300